**In re Charlena C. SINGLETON, Debtor,**

**Charlena C. Singleton, Appellant–Plaintiff,**

v.

**Countrywide Home Loans, Inc., Federal National Mortgage Association, Kraig S. Keyes and John Rock, Trustee of the 2012 Irving Ave. Land Trust, Appellees–Defendants.**

C.A. No.: 2:06–cv–1666–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

Oct. 27, 2006.

### ORDER

DUFFY, District Judge.

Charlena C. Singleton ("Singleton" or "Appellant"), debtor in this Chapter 13 case, appeals to this court from the final Order of the Bankruptcy Court entered March 9, 2006, denying Singleton's Motion to Reconsider the Court's Orders Granting Summary Judgment. Appellees Country-

wide Home Loans, Inc. ("Countrywide"), Federal National Mortgage Association ("Federal National"), Kraig S. Keyes ("Keyes"), and John Rock ("Rock") have timely responded to this Appeal.

### PROCEDURAL BACKGROUND

Countrywide Home Loans filed an action in state court on September 25, 2003, to foreclose a mortgage on property owned by Singleton located at 2012 Irving Avenue, North Charleston, South Carolina. On January 29, 2004, the Master–in–Equity for Charleston County entered an Order granting foreclosure of the mortgage, with the sale to take place on March 8, 2004. On March 5, 2004, Singleton filed a Chapter 13 bankruptcy petition under case number 04–02775–WB. The petition triggered the automatic stay provision, 11 U.S.C. § 362(a), which stayed all proceedings by creditors to levy on Singleton's property. The Bankruptcy Court dismissed this case by an Order entered on May 4, 2004. According to the Order, Singleton "failed to meet the very basic requirements" to file bankruptcy and failed to appear at the hearing on the Court's Rule to Show Cause; therefore, the Bankruptcy Court dismissed the petition with prejudice pursuant to 11 U.S.C. §§ 105 and 1307, and prohibited Singleton from refiling for bankruptcy for a period of one year. On September 7, 2004, Singleton filed a motion to reconsider the dismissal of her bankruptcy case[1] and a hearing was scheduled for October 13, 2004.

On September 2, 2004, the Master–in–Equity issued a Supplemental Foreclosure Decree and scheduled the public auction. Countrywide bought Singleton's property at the public auction on September 24, 2004. Thereafter, Countrywide assigned

---

1. Countrywide asserts that notice of Singleton's motion to reopen her bankruptcy case was sent to the incorrect address. Therefore, Countrywide claims that Singleton failed to provide proper notice to it.

its bid to Federal National Mortgage Association. On September 30, 2004, the balance due for the sale was forwarded to the Master–in–Equity and, on October 11, 2004, the Master issued an Order confirming the sale to Federal National.

On October 13, 2004, the Bankruptcy Court issued an Order purporting to "reopen" Singleton's case pursuant to 11 U.S.C. § 350(b).[2] This Order was entered on October 20, 2004.

On October 22, 2004, the Master's deed, dated October 5, 2004, was recorded, reflecting the transfer of Singleton's property to Federal National pursuant to the auction held in September. On December 21, 2004, Federal National conveyed the property to Appellee Kraig Keyes. On December 23, 2004, Keyes conveyed the property to John Rock as Trustee for the 2012 Irving Avenue Land Trust. Both the deeds to Keyes and to Rock were recorded on March 17, 2005.

On January 24, 2005, Singleton filed a motion to reimpose the bankruptcy stay on the property at 2012 Irving Avenue. Appellees entered no objections on this motion. Accordingly, after notice and hearing, the Bankruptcy Court granted Singleton's motion and entered an Order purporting to reimpose the bankruptcy automatic stay on Singleton's property on April 19, 2005.

On August 25, 2005, Singleton instituted this action against Keyes, Rock, Countrywide, and Federal National, arguing that these Defendants' dealings with the property at 2012 Irving Avenue was in violation of the automatic stay. Defendant–Appellees filed motions for summary judgment and supporting memorandum.

In considering the motion for summary judgment, the Bankruptcy Court explained that at the time the bankruptcy case was reinstated, the judgment of foreclosure and sale had been entered and the purchaser had complied with the initial terms of the sale, such that Singleton held only bare legal title to the property. Under these circumstances, the property was not considered a part of the bankruptcy estate. [February 21, 2004 Order at 4 (citing *In re Watts*, 273 B.R. 471 (Bankr.D.S.C.2000)) (holding that where prior to filing of bankruptcy petition the judgment of foreclosure and sale were entered, public sale took place, and successful purchaser at foreclosure sale had complied with initial terms of sale by providing deposit guaranteeing its bid, then the subject property could not be deemed to constitute property of Chapter 13 bankruptcy estate, even though deed had yet to be properly executed); *In re Holmes*, No. 99–08796–B (Bankr.D.S.C. Nov.23, 1999).] The Bankruptcy Court further found that Keyes and Rock were protected as bona fide purchasers for value without notice of Singleton's claims, pursuant to South Carolina Code § 15–39–870. Therefore, the Bankruptcy Court held that "the property located at 2012 Irving Avenue was no longer property of the estate under 11 U.S.C. § 541 at the time the case was reinstated, and that there was no violation of the automatic stay." [February 10, 2006 Order at 5.] Accordingly, on February 10, 2006, the Bankruptcy Court granted Defendants Countrywide and Federal National's motions for summary judgment, and granted Defendants Keyes and Rock's motion for summary judgment on February 21, 2006.

Singleton filed a motion to reconsider these Orders on February 20, 2006. A hearing on this motion was held on March 7, 2006. The Bankruptcy Court denied Singleton's motion to reconsider by Order

**2.** "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

entered on March 9, 2006. Singleton filed this appeal on March 20, 2006.

## STANDARD OF REVIEW

■ Under 28 U.S.C. § 158(a), United States District Courts have jurisdiction to hear appeals of final judgments, orders, and decrees of Bankruptcy Courts. On appeal from the Bankruptcy Court, the district court acts as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error, while it reviews the conclusions of law *de novo*. *Devan v. Phoenix Am. Life Ins. Co. (In re Merry–Go–Round Enterprises, Inc.)*, 400 F.3d 219, 224 (4th Cir.2005); *Kielisch, et al. v. Educ. Credit Mgmt. Corp., et al. (In re Kielisch)*, 258 F.3d 315, 319 (4th Cir.2001). The Bankruptcy Court's grant of summary judgment is reviewed *de novo* under Rule 56 of the Federal Rules of Civil Procedure. *Tidewater Fin. Co. v. Williams*, 341 B.R. 530, 533 (D.Md.2006) (citing *Century Indem. Co., et al. v. Nat'l Gypsum Co. Settlement Trust, et al. (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 504 (5th Cir.2000)). The district court may affirm, modify, or reverse a Bankruptcy Judge's order, or remand with instructions for further proceedings. *See* Fed. R. Bankr.P. 8013. The court has reviewed the file and determines that oral argument is not necessary. *Id.* ("Oral argument shall be allowed in all cases unless the district judge determines after examination of the briefs and record, or appendix to the brief, that oral argument is not needed.").

## DISCUSSION

Singleton asserts that the Bankruptcy Court erred in finding that the Appellees' foreclosure and transfer of the property located at 2012 Irving Avenue was not in violation of a Chapter 13 automatic stay. Singleton argues that (1) the "reopening" of the bankruptcy case retroactively imposed the automatic stay such that property disposed of after the dismissal of the case is reinstated into the estate and (2) even if the automatic stay was not retroactive, the Bankruptcy Court's April 18, 2004 Order re-imposing the stay on the subject property brought the subject property back into the estate.

**(1) Did the reopening of the bankruptcy case retroactively impose the automatic stay on the subject property?**

■ Generally, filing a petition under Chapter 13 of the Bankruptcy Code triggers an automatic stay of creditor proceedings against a debtor's property. 11 U.S.C. § 362(a). While the stay is in effect, the creditor cannot proceed with foreclosure. Section 362(c) provides that the stay of such proceedings "continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). Thus, when the petition giving rise to the stay is dismissed, the stay terminates immediately, and creditors may proceed with foreclosure. *Lomagno v. Salomon Bros. Realty Corp. (In re Lomagno)*, 429 F.3d 16, 17–18 (1 st Cir.2005) (citing *In re de Jesus Saez*, 721 F.2d 848, 851 (1st Cir.1983)). In this case, however, the issue is whether a foreclosure sale is valid when the foreclosure takes place after the dismissal of a Chapter 13 bankruptcy petition, but before the case is "reopened" by the Bankruptcy Court.

■ Singleton asserts that the reopening of her case retroactively imposed the automatic stay on her estate to the date of her original petition, thereby voiding all transfers of estate property that occurred in the interim. In support of her argument, Singleton notes that a bankruptcy court's reopening pursuant to § 350(b) of a closed case acts to continue the original bankruptcy proceeding as if the case had

never been closed. *See Geberegeorgis v. Gammarino (In re Geberegeorgis)*, 310 B.R. 61, 65–66 (6th Cir. BAP 2004) ("[A] bankruptcy is usually closed after the bankruptcy proceedings are completed . . . [A] bankruptcy is reopened under 11 U.S.C. § 350(b), not to restore the pre-bankruptcy status, but to continue the bankruptcy proceedings."); *Figlio v. American Mgmt. Servs., Inc. (In re Figlio)*, 193 B.R. 420, 424–25 (Bankr.D.N.J. 1996) (indulging the fiction that a reopened case "was never 'closed' "). Accordingly, some bankruptcy courts have held that, at the discretion of the court, estate property not administered prior to the original closing may be revived and made a part of the bankruptcy estate once the case is reopened. *See Woods v. Kenan (In re Woods)*, 173 F.3d 770 (10th Cir.1999) (noting a court has broad power to modify or revoke a technical abandonment once a case is reopened). Other courts have held that the reopening of a case under § 350(b) automatically revives the original case and negates any "technical abandonments" of estate property.[3] *See Compass Bank for Savings v. Billingham (In re Graves)*, 212 B.R. 692, 695–96 (1st Cir. BAP 1997); *In re Figlio*, 193 B.R. at 424–25. Relying on this case law, Singleton asserts that the reopening of her case restores to the estate that property which was not administered prior to the closing of the case. Therefore, Singleton argues that the property at 2012 Irving Avenue, which was a part of the bankruptcy estate at the time of the original petition on March 5, 2004 and was not administered prior to dismissal, has been restored to the estate.

The court begins by noting that the Bankruptcy Court erred in characterizing its October 13, 2004 Order as "reopening" a closed case. In bankruptcy, Section 350(b) of Title 11 of the United States Code addresses the reopening of closed cases. Under § 350(a), the court shall close a case "[a]fter an estate is fully administered and the court has discharged the trustee." Section 350(b) in turn provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." But a case can only be reopened if it was first closed. *In re Geberegeorgis*, 310 B.R. at 65–66. Case closing is a concept distinct from case dismissal. *Id.; Armel Laminates, Inc. v. The Lomas & Nettleton Co. (In re Income Property Builders, Inc.)*, 699 F.2d 963, 965 (9th Cir.1982) ("An order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and is not an order closing."). In this case, the Bankruptcy Court dismissed Singleton's original petition for, among other things, failing to include the required Chapter 13 Plan, schedules, and statements. Accordingly, when the case was dismissed, the estate had clearly not been "fully administered" as required for a case to be closed pursuant to § 350(a). As such, the record shows that Singleton's case was dismissed, not closed, at the time Singleton filed her motion. Therefore, the court finds that the Bankruptcy Court erred when it purported to "reopen" the dismissed case pursuant to § 350(b).

Because the court finds that the Bankruptcy Court had no authority to "reopen" the dismissed case, the court next addresses whether the Bankruptcy Court other-

---

**3.** 11 U.S.C. § 554(c) provides that "any property scheduled under section 521(1) of this title that is not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350." Property that is "abandoned" by the trustee pursuant to operation of § 554(c) is referred to as "technically abandoned."

wise had authority to vacate the dismissal order and whether it abused its discretion in exercising that authority. Motions to vacate dismissal orders, also called motions to reinstate cases, are frequent procedural requests under Chapter 13. *In re Geberegeorgis,* 310 B.R. at 66. Bankruptcy courts are authorized to set aside a final judgment or order, including case dismissal orders, under Fed. R. Bankr.P. 9024, which incorporates Fed.R.Civ.P. 60(b) into practice under the Bankruptcy Code. *In re King,* 214 B.R. 334, 336 (Bankr.W.D.Tenn. 1997) (holding that because debtor's case was not closed, it may not be "reopened" under § 350(b); however, the order of dismissal may be set aside pursuant to Fed. R. Bankr.P. 9024); *In re Woodhaven, Ltd.,* 139 B.R. 745, 749 (Bankr.N.D.Ala.1992) (same). Rule 60(b) sets forth six reasons that justify granting relief from a final judgment or order:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). In this case, because it incorrectly relied upon § 350(b) to "reopen" this case, the Bankruptcy Court did not specify a clause of Rule 60(b) which would justify its decision to vacate the dismissal order. Accordingly, the court considers Singleton's motion to vacate the dismissal and the transcript of the hearing upon that motion to determine whether Rule 60(b) authorized the Bankruptcy Court to vacate its dismissal Order. In its entirety, Singleton's "Motion to Reconsider Dismissal of Case" [4] stated,

> The Debtor was contacted by one, Lloyd Trotter, who is not an attorney and promises to help her save her home from foreclosure after Mr. Trotter mailed her a copy of the newspaper notice of foreclosure on her house. Mr. Trotter decieved Ms. Singleton into thinking that he had some expertise in bankruptcy law and refinancing, but in fact, was a total fraud. Because of Ms. Singleton's reliance upon Mr. Trotter (sic) representations, she was unaware of the deficiencies in the bankruptcy which Mr. Trotter filed on March 5, 2004.

> The Debtor filed Pro Se on March 5, 2004 without the required schedules, statements, and [without] a Chapter 13 Plan. On May 4, 2004, an Order was entered which dismissed the case for failure by the debtor to disclose prior

---

4. Although Singleton described her motion as one for reconsideration, it is clear that the motion was properly made under Rule 60, seeking relief from the Order. Singleton did not contest that her original petition was deficient or that she did not appear in court prior to its dismissal. Accordingly, Singleton was not seeking reconsideration of the facts or law underlying the Order dismissing the case, because the dismissal was appropriate. Singleton was seeking relief from the Order on equitable grounds, arguing that she was not at fault for the previous deficiencies and she is now able to cure the deficiencies in her petition.

bankruptcies and failure to appear in court.

The Debtor contacted this attorney for help. The Debtor is willing and able to make the required necessary schedules, statements and Chapter 13 Plan.

The Debtor requests that the dismissal of the case be reconsidered and the automatic stay be reimposed on all creditors.

At the hearing upon this Motion, Countrywide and Federal National had no objection to reopening the case. [Oct. 13, 2004 Hearing Tr. at 2.] Accordingly, without further discussion, the Bankruptcy Court accepted Singleton's version of the facts and "reopened" her case. As mentioned previously, the court interprets the Bankruptcy Court's "reopening" of the case as vacating the Order dismissing Singleton's bankruptcy petition.

Under the facts as accepted by the Bankruptcy Court, clauses (1), (2), (3), (4), and (5) of Rule 60(b) are clearly inapplicable to authorize relief from the dismissal of Singleton's case. However, considering that Singleton's original petition was filed by a "total fraud" who tricked her into failing to properly file the petition, the court finds that Singleton presented the Bankruptcy Court with an "other reason justifying relief from the operation of the judgment" as meant by Rule 60(b)(6). Accordingly, the court finds that the Bankruptcy Court, while improperly characterizing its Order as one pursuant to § 350(b), did properly vacate its Order dismissing Singleton's bankruptcy petition pursuant to Fed. R. Bankr.P. 9024, which incorporates Fed.R.Civ.P. 60(b).

Because the original case was not "closed" and then "reopened," the court finds that Singleton's arguments regarding the court's ability to reinstate abandoned estate property pursuant to § 350(b) and § 554(c) are inapplicable to this case.

Nonetheless, the court now considers whether vacating an Order dismissing the case can impose an automatic stay retroactive to the date of the vacated Order. Several courts have examined the specific situation where a Chapter 13 case is dismissed and subsequently reinstated after a period of time, and a secured creditor has taken action against a debtor's property during that time period. In *Frank v. Gulf States Fin. Co. (In re Frank)*, 254 B.R. 368 (Bankr.S.D.Tex.2000), a debtor brought an action for damages when a secured creditor repossessed the debtor's car after her Chapter 13 bankruptcy case was dismissed but prior to its reinstatement. The bankruptcy court rejected the debtor's arguments that the creditor violated the automatic stay. In response to the debtor's argument that when the order of dismissal was vacated, all of its consequences (including termination of the automatic stay) were terminated, the court held "that even if a case is reinstated, the automatic stay is not retroactively reinstated with respect to creditor conduct that occurred between the dismissal and the reinstatement." *Id.* at 374. Similarly, in *Jennings v. R & R Cars and Trucks (In re Jennings)*, 2001 WL 1806980 at *3 (Bankr.D.S.C.), the bankruptcy court found that "[a]lthough this Court vacated the dismissal of Debtors' Chapter 13 case, this ruling did not retroactively reinstate the automatic stay during the period when the case was dismissed." In *Krueger v. Great Pac. Money Mkts. (In re Krueger)*, 69 B.R. 845 (Bankr. C.D.Cal.1987), the bankruptcy court had before it the question of whether a district court's reinstatement order that ostensibly gave retroactive effect to an automatic stay had any effect on a foreclosure sale completed prior to that order and after the bankruptcy court's dismissal order. The court noted:

The foreclosure sale proceeded in accordance with California law. There was no violation of the automatic stay because the foreclosure sale took place after [the bankruptcy court's] dismissal order and before [the district court's] reinstatement order. [The district court's] order cannot give retroactive effect to the automatic stay and thereby cause the foreclosure sale to be a violation of the automatic stay. Therefore, the foreclosure sale is not affected by [the district court's] action.

*Id.* [Footnote omitted]

For the reasons as stated by these cases, the court finds that the Bankruptcy Court correctly found that the automatic stay in this case became effective on October 13, 2004 and did not retroactively attach to the date of the original petition.[5]

### (2) Does the April 18, 2005 Order bar Appellees from asserting that the subject property is not subject to the automatic stay?

■ The Bankruptcy Court's Order of April 18, 2005 purports to "re-impose the automatic stay on real property of the bankruptcy estate located at 2012 Irving Ave." Singleton asserts that, if the automatic stay did not retroactively cover the period in which the petition was dismissed, this Order brought the subject property back into the estate. As such, Singleton claims that Appellees are barred by the principles of res judicata and judicial estoppel from asserting that the subject property is not a part of the bankruptcy estate.

In the factually similar case of *Nicholson v. Nagel (In re Nagel)*, 245 B.R. 657 (D.Ariz.1999), a bankruptcy court retroactively reinstated the debtor's bankruptcy case to October 14, 1997, as if the automatic stay had not been terminated, with the original order stating as follows:

IT IS HEREBY ORDERED that the reinstatement of this case as of October 14, 1997 reinstated the automatic stay as of such date and any acts or conduct taken since October 14, 1997 were in violation of the automatic stay pursuant to 11 U.S.C. § 362(a) and are void, including but not limited to the Trustee Sale held on December 2, 1997.

*Id.* at 661, n. 6. In that case, the Arizona District Court ruled that the bankruptcy court erred in granting the debtor's second motion to reinstate the case retroactively when the case was properly dismissed for failure to file required documents. The District Court reasoned as follows:

A review of the case law provided by the parties and the court's own research reveals *no basis in law for the proposition that the automatic stay continues after dismissal of a case. A retroactive reinstatement of the automatic stay is not consonant with this conclusion. Indeed, the bankruptcy court's retroactive reinstatement of the "automatic stay" is squarely at odds with the plain reading of subsection 362(c)(2)* and Congress' intent that the parties be returned to the *status quo ante.* By "undoing" the re-

---

**5.** In her Appellant Brief, Singleton also argues that the Bankruptcy Court erred in finding (1) that Keyes and Rock's status as bona fide purchasers for value without notice gives them good title to the subject property; (2) that the Master's Sale removed the property from the bankruptcy estate; and (3) that the transfer of the property from Federal National to Keyes was not void. The court notes, however, that the validity of these arguments is dependant upon the court's finding that the automatic stay on Singleton's estate was continuously effective from the date of her original petition. Because the court finds that the automatic stay was not effective at the time Countrywide foreclosed upon the subject property, the court summarily finds all of these arguments to be without merit.

turn to the *status quo ante* through the retroactive application of the stay, the bankruptcy court engaged in a kind of judicial time travel that cannot be reconciled with the law. This was not a simple matter of a *nunc pro tunc* order accomplishing that which should have been done previously. Rather, the order of April 8, 1998, divested otherwise vested rights from parties previously properly restored to the *status quo ante* pursuant to subsection 362(c)(2).

*Id.* at 662 (Emphasis supplied).

In this case, for the reasons as explained by the Court in *Nagel,* the court finds that the Bankruptcy Court had no authority to re-impose the automatic stay on property no longer included in the bankruptcy estate. While the Bankruptcy Code grants a bankruptcy court the power to retroactively *grant relief* from a stay, 11 U.S.C. § 362(d); *In re Albany Partners Ltd.,* 749 F.2d 670, 675 (11th Cir.1984), this court is unaware of any authority that grants the bankruptcy court power to retroactively *impose* a stay. *See In re Hill,* 305 B.R. 100, 105 (Bkrtcy.M.D.Fla.2003). Accordingly, the court finds that the April 18, 2005 Order is a nullity and is not binding upon the Appellees.

It is undisputed that the foreclosure sale of the property at 2012 Irving Avenue proceeded in accordance with South Carolina law. There was no violation of the automatic stay because the foreclosure sale took place after the Bankruptcy Court's dismissal order and before the Bankruptcy Court vacated the dismissal order. For the reasons as discussed above, the reinstatement of the case cannot give retroactive effect to the automatic stay and thereby cause the foreclosure sale to be a violation of the automatic stay. Therefore, the Bankruptcy Court correctly found that neither Countrywide's foreclosure of its mortgage on the subject property, nor the subsequent transfers of the subject property to Federal National, Keyes, and Rock, were not in violation of the automatic stay.

## CONCLUSION

For the foregoing reasons, the court **ORDERS** that the Bankruptcy Court's Order granting summary judgment to the Appellees is hereby **AFFIRMED.**

**AND IT IS SO ORDERED.**